WILLIAMS, J.
_JjThe defendant, Jerry R. Lynn, Jr., was charged by bill of indictment with seven counts of carnal knowledge of a juvenile, violátions of LSA-R.S. 14:8b.[1] Pursuant to a plea agreement, the defendant pled guilty to one count of the indictment. In exchange for the guilty plea, the state agreed to dismiss the remaining charges. The defendant was sentenced to serve 10 years at hard labor.
Subsequently, in a separate proceeding, the defendant was charged with 15 counts of indecent behavior with- a juvenile, in violation of LSA-R.S. 14:81. He pled guilty to one count of indecent behavior with a juvenile. In exchange for the guilty plea, the state agreed to dismiss the remaining charges. -The defendant-was sentenced to serve five years at hard labor, to run consecutively with the 10-year sentence imposed for the carnal knowledge of a juvenile’ conviction. For the following reasons, we affirm.
FACTS
The victim in .this case, L.S.,[2] resides in Little Rock, Arkansas with her mother and her half-sister, E.L., the defendant’s biological child.[3] The defendant and the children’s mother divorced in- the fall of 2012. 0.n several occasions during the summer of 2013, L.S. and E.L. traveled to the |2defendant’s house in Morehouse Parish for visitation.[4] The two children returned home to Arkansas in August.
On October 15, 2013, a -detective with the police department of Little Rock, Arkansas contacted the- Morehouse Parish Sheriffs Office. The detective stated he had received a complaint through the Arkansas State Police Crimes- Against Children Hotline. The detective informed the Morehouse-Parish officials that .L.S., who *610 was then 15 years old, had possibly been molested by the defendant, her former stepfather.
The Arkansas authorities interviewed L.S., who revealed that she and the defendant had engaged in sexual intercourse on three different occasions between June and August 2013. L.S. provided a detailed description of a series of oral and vaginal sexual encounters with the defendant. She also stated that the defendant provided her with an alcoholic beverage on one occasion and that she and the defendant smoked marijuana on two occasions. L.S. described one incident during which the defendant held a knife to her neck and stated “This is going to be kinky ... and if you don’t do what I tell you to, I’m going to cut you a little bit on your neck.”
In response to the information provided by the officials in Arkansas, deputies from Morehouse Parish located the defendant and arranged to interview him. During the interview, the defendant stated that L.S. and E.L. visited him in Arkansas once a month during the summer of 2013. He admitted that, during one visit, he and L.S. smoked marijuana and drank vodka. The defendant stated that L.S. initiated sexual contact with him by l/rubbing up against me and kissing on me [and] I didn’t resist.” He further stated that he had sexual (vaginal) intercourse with L.S. and that they performed oral sex on each other. The defendant denied ever holding a knife to L.S.’s neck. .
Thereafter, the law enforcement officers conducted a search of L.S.’s cell phone. The search revealed that the defendant and L.S. began exchanging photographs and text messages in September 2013, after L.S. returned to Arkansas. The officers discovered that the defendant had sent to L.S. 15 sexually explicit text messages and several photographs of his erect penis. The search also revealed that the defendant had solicited and received numerous photographs of L.S'.’s breasts. The defendant admitted that he sent inappropriate text messages to L.S. and that L.S. had sent him photographs of her breasts.
As stated above, the defendant was charged with' seven counts of felony carnal knowledge of a juvenile, in violation of LSA-R.S. 14:80 (No. 50,575-KA). In a subsequent proceeding, he was charged with 15 counts of indecent behavior with a juvenile, in violation of ' LSA-R.S. 14:81(A)(2) (No. 50,576-KA).
On February 3, 2015, pursuant to a plea agreement, the defendant pled guilty to one count of felony carnal knowledge of a juvenile and one count of indecent behavior with a juvenile. In exchange for the defendant’s guilty pleas, the state agreed to dismiss the remaining 20 counts. There was no agreement as to sentencing.
Following a sentencing hearing, the trial court sentenced the Ldefendant to serve 10 years at hard labor for the carnal knowledge of a juvenile conviction and 5 years at hard labor for the indecent behavior with a juvenile conviction. The court ordered the sentences to be served consecutively. Subsequently, the defense filed a motion to reconsider sentence, arguing that the sentences were excessive and that the 'trial court faded to adequately consider the mitigating circumstances. The trial court denied the motion without reasons;
The defendant now appeals.
DISCUSSION
The defendant contends the sentences are constitutionally excessive. ,He argues that the trial court failed to consider any mitigating factors. The defendant also argues that the court failed to adequately articulate a factual basis for the imposition of the 15-year sentence.
*611 An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of. the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297.
The articulation of the factual basis for a sentence is the goal of LSA-C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence | ¡Jmposed, remand is unnecessary even where there has not been full compliance with Article 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La. App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
The trial court has wide discretion in the imposition of sentences within the statutory limits, and the sentence im: posed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.01/25/12), 86 So.3d 29.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802; State v. Woods, 41,420 (La.App.2d Cir.11/1/06), 942 So.2d 658, writs denied, 2006-2768 (La.6/22/07), 959 So.2d 494, 2006-2781 (La.6/22/07), 959 So.2d 494. However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense *612 involves violence upon a victim. State v. Germany, 43,239 (La.App.2d Cir.4/30/08), 981 So.2d 792; State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430. A substantial advantage obtained by means of a plea bargain .is a legitimate consideration in sentencing. State v. Mendenhall, 48,028 (La.App.2d Cir.5/15/13), 115 So.3d 727; State v. Ross, 35,552 (La.App.2d Cir.2/27/02), 811 So.2d 176.
A person convicted of felony carnal knowledge of a juvenile shall be fined riot more than $5,000, or imprisoned, with or without hard labor, for not more than 10 years, or both. LSA-R.S. 14:80(D)(1). A person convicted of indecent behavior with a juvenile shall be fined not more than $5,000, or imprisoned with or without hard labor for not more than seven years, or both. LSA-R.S. 14:81(H)(1).
In the instant case, as stated above, the defendant was sentenced to serve 10 years at hard labor for the carnal knowledge of a juvenile conviction and five years at hard labor for the indecent behavior -with a juvenile conviction. Prior to imposing the sentences, the trial court reviewed the pre-sentence investigation report and recited the facts of this case. The court noted the defendant’s family, education, and employment history and the fact that the defendant did not haye any prior felony, or misdemeanor convictions. The court stated that it had considered letters submitted on the defendant’s behalf. The letters described. the defendant as a “good person” and stated that his actions in this case are out of character for him.
Additionally, the court considered a statement by the victim’s mother. The victim’s mother indicated that since -this incident, L.S. has - attempted to commit suicide and has been admitted to The BridgeWay, a behavioral health center, on three occasions. The mother also stated that, at the time of the hearing, L.S. continued to undergo mental health treatment. The court noted that, as a result of the defendant’s actions, L.S. will carry the emotional scars for the rest of her life and will require counseling for most, if not all, of her life. The court noted that the defendant received the benefit |8of leniency through the plea agreement, which resulted in the dismissal of 20 additional criminal charges.
Further, the trial court considered the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1. The court stated that there was an undue risk that the defendant would commit another offense if not incarcerated, that the defendant was. in need of correctional treatment, and that a lesser sentence would deprecate the seriousness of his crime.. As an aggravating factor, the court noted that the defendant’s conduct during the commission of the offense manifested deliberate cruelty to the victim, noting the incident wherein the defendant held a knife to the victim’s throat. The court stated that the defendant used his position or status as the victim’s ex-stepfather to facilitate the commission of the offense as he had known the victim since she was two years old, had developed a close relationship with her, and then violated that trust.
The court further noted that the offense involved multiple incidents, for which separate sentences have not been imposed, noting that if the defendant had gone to trial, he would have likely been convicted of all 20 criminal charges. Further, the court stated that although the defendant cooperated when he was interviewed by the police, he attempted to blame the victim by stating that- the victim was “rubbing” against him and he did not resist. Additionally, the court noted that the defendant did not admit to the totality of his criminal conduct, as the defendant stated that he *613 had sexual intercourse with the victim on only one occasion. As mitigating factors, the court noted that the defendant has no prior criminal history and 19that his imprisonment would entail excessive hardship to his minor child,
We have reviewed this record in its entirety. We find that the trial court did not abuse its great discretion in imposing the sentence of 10 years for the carnal knowledge of a juvenile conviction and five years for the indecent behavior with a juvenile conviction. The record reveals that the court considered the relevant mitigating factors, including the defendant’s lack of a criminal history and the hardship that his incarceration would cause.his minor child. Additionally, the defendant received a substantial benefit from the state’s agreement to dismiss the remaining 20 criminal charges.
The defendant candidly admitted that he provided his then-15-year-old former stepdaughter with marijuana and alcoholic beverages and engaged in sexual intercourse with her. After the victim returned home, the defendant resumed his criminal behavior by sending her pictures and sexually explicit text messages.- The defendant also solicited pictures of the victim’s breasts. Given the grievousness of the defendant’s actions, we find that the sentences imposed for the defendant’s convictions are not constitutionally excessive.
The defendant also contends the trial court failed to adequately articulate reasons for the imposition of- consecutive'sentences. He argues that the crimes arose out of a single course of conduct with one victim over the course of one summer.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment | inshall be served concurrently unless the court expressly directs that some or all be served consecutively. LSA-C.Cr.P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory, State v. Mitchell, 49,873 (La.App.2d Cir.6/24/15), 169 So.3d 749; State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988), and consecutive sentences under those circumstances are not necessarily excessive. State v. Hampton, 38,017 (La.App.2d Cir.1/28/04), 865 So.2d 284, writs denied, 2004-0834 (La.3/11/05), 896 So.2d 57, 2004-2380 (La.6/3/05), 903 So.2d 452; State v. Williams, 445 So.2d 1171 (La.1984). It is within the court’s discretion to make sentences consecutive rather than concurrent. State v. Johnson, 42,323 (La.App.2d Cir.8/15/07), 962 So.2d 1126.
A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence or record. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. State v. Johnson, supra. Among the factors tó be considered are the defendant’s criminal history, the gravity or dangerousness of the offense, the viciousness of the crimes, the harm done to the-victim, whether the defendant poses an unusual risk of danger to the public, the potential for the defendant’s rehabilitation, and whether the defendant has received a benefit from a plea bargain. State v. Johnson, supra; State v. Barnett, 46,303 (La.App.2d Cir.5/18/11), 70 So.3d. 1, writ denied, 2011-1612 (La.4/13/12), 85 So.3d 1239. The failure to articulate specific reasons for Inconsecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. See State v. Boudreaux, 41,660 (La.App.2d Cir.12/13/06), 945 So.2d 898.
*614 Our review of this record convinces us that the record provides an adequate factual basis to support the imposition of consecutive sentences. As stated above, the record reveals that the defendant engaged in oral and vaginal sexual intercourse with the then-15-year-old victim when she visited with him during the summer of 2013. When the victim returned to her home in Arkansas, the defendant resumed his criminal activities approximately one month later, by sending her sexually explicit photographs and text messages.
We find that the sexual intercourse and the transmission of sexually explicit messages and photographs did not arise from the same act or transaction, or constitute parts of a common scheme or plan. The crime of carnal knowledge of a juvenile had been completed by the time the victim returned to her home in Arkansas. Approximately one month after L.S. returned home, the defendant committed different and wholly new criminal acts by sending her the photographs and sexually explicit text messages. For these reasons — and all of the reasons stated above during our discussion of the defendant’s excessive sentence argument — we find that the trial court did not abuse its discretion in imposing consecutive sentences for this defendant.
CONCLUSION
For the reasons set forth herein, the defendant’s convictions and [iasentences are hereby affirmed.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED.

.Initially, the defendant was charged by bill of information with three counts of aggravated incest, violations of LSA-R.S. 14:78.1, and one count of contributing to the delinquency of a minor, a violation of LSA-R.S. 14:92(9). These charges were dismissed after the state discovered that the defendant was the victim's former stepfather.

. Because this case involves a juvenile victim, only her initials will be used in this opinion. LSA-R.S. 46:1844(W)(3).

. At that time, E.L. was eight years old.

. The defendant met, and later married, L.S.’s mother when L.S. was two years old. The defendant had served as the victim’s father figure for most of her life.